IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | No. 12-418-3 |
| v. | : | |
| | : | CIVIL ACTION |
| KAREEM LONG | : | No. 18-423 |

**MEMORANDUM**

Juan R. Sánchez, C.J.                                                                 March 31, 2021

     Defendant Kareem Long collaterally attacks his convictions for conspiring and attempting to rob a fictitious stash house. He argues his counsel was ineffective because he: (1) opened the door to previously excluded Rule 404(b) evidence; (2) failed to raise and seek discovery on a selective enforcement defense; (3) forfeited the sentencing entrapment defense; and (4) forfeited an outrageous conduct defense. Long also argues the Court applied the incorrect standard in denying selective enforcement discovery and his conviction for carrying a firearm during a drug crime or crime of violence should be overturned because recent Supreme Court cases held the definition of a crime of violence is unconstitutionally vague. The Court will deny Long's motion to vacate, set aside, or correct his sentence without a hearing because the record shows that his attorney was not constitutionally ineffective, the Court applied the correct standard in denying selective enforcement discovery, and his conviction is not implicated by the recent Supreme Court precedent.

**BACKGROUND**

     Long and his seven codefendants[1] were caught in a Bureau of Alcohol Tobacco and Firearms sting involving a fake stash house. During the sting, an undercover ATF agent posed as

---

[1] Long's codefendants are Robert Lamar Whitfield, Marlon Graham, Najee Murray, Frank Thompson, Kenneth Parnell, Lafayette Rawls, and Jamie Dales.

1

someone who knew of a stash house with ten kilograms of cocaine. A confidential informant put the agent in touch with one of Long's codefendants, Robert Lamar Whitfield. Whitfield and the agent then organized a robbery of the stash house. On the day of the robbery, July 18, 2012, Long and the other codefendants arrived to assist. While ATF Agent Edwards had only recruited four individuals to perpetrate the robbery, several additional individuals showed up to help, including Long. Najee Murray testified that Long expressed interest in committing the robbery and that he had prior experience in robberies.

The agent and the Defendants met in a hotel parking lot to plan the robbery. Then, they drove to a junkyard to ostensibly pick up a car the agent had brought for the robbery. At the junk yard, the Defendants began preparing for the robbery by taking out their guns and putting on gloves. The agent then called in backup and all the Defendants were arrested. On August 9, 2012, all eight Defendants were indicted. While three of Long's codefendants pleaded guilty, Long and the remaining four codefendants went to trial.

During the trial, the jury heard testimony from the undercover ATF agent who had participated in the sting. The agent walked the jury through his interactions with the Defendants. He answered questions about audio and video recordings of his meetings with Whitfield and his discussions with the Defendants on the day of the fake robbery. The agent also gave the jury some background information about how he investigated the Defendants. This information included how he decided what story to tell the Defendants, how he worked with the confidential informant, how he decided where and when to meet the Defendants, and how he recorded his conversations with the Defendants.

The jury also heard testimony from Detective Christopher Marano, an expert on drug trafficking. Detective Marano testified about how cocaine moves in interstate commerce, the

various ways to sell cocaine, and the amount of cocaine that is typically sold. During his testimony, he opined that the only way to make money from drugs is to sell them. He also opined that no one could possess even close to ten kilograms of cocaine for personal use because using such a large amount of cocaine would be fatal.

Parnell also testified on his own behalf at trial. He testified that he drove Kareem Long to the meeting at the hotel parking lot and to the junkyard. He explained that he drove Long's car because Long was not familiar with the area. According to ATF Agent Williams' testimony, Whitfield had instructed Long to perpetrate home invasion robberies in the past and Rawls testified that he recruited Long to help with the robbery. The Government argued Long's codefendants recruited him to participate in the conspiracy because of his past experience in home invasion robberies. Rawls testified that shortly before the July 18, 2012, robbery, Long had come to him to say that he needed a "lick," which Rawls explained was code for a robbery. Rawls further testified that Long sent him a text message on July 18, 2012, saying "we don't have no guns, we need – we don't have no guns bro, we need two." Rawls also testified that he told Long there were "12 bricks" in the stash house. Although Long claims he never intended to participate in the robbery, Agent Williams testified to witnessing Long retrieve a firearm from the trunk of a car and "rack" it before being arrested.

On May 22, 2013, the jury convicted Long of five charges: conspiracy to commit Hobbs Act robbery, attempted Hobbs Act robbery, conspiracy to sell drugs, attempt to sell drugs, and carrying a firearm during a drug crime or crime of violence. According to the jury's answers to special interrogatories on the verdict slip, Long's conviction for carrying a firearm during a drug crime or crime of violence was premised on all four of Long's other convictions. After his conviction, Long and his codefendants sought discovery on whether they were victims of selective

enforcement. They argued they were targeted in the stash house sting because they were all black. The Court denied the motion because it was untimely and because the Defendants did not meet the threshold showing for discovery on this claim. The Court then sentenced Long to 192 months in prison.

On August 21, 2014, Long appealed his conviction and sentence. The Third Circuit denied his appeal. *See United States v. Long*, 649 F. App'x 200 (3d Cir. 2016).[2] Long then filed a petition for rehearing on May 16, 2016, and the petition was denied on June 2, 2016. After two extensions, Long now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He raises five arguments. In his first four arguments, Long claims his counsel was ineffective for failing to raise certain issues while his case was being litigated. He also claims the Court erred in denying discovery on the selective enforcement defense. In his final argument, Long claims the Supreme Court's recent decisions undermine his conviction for carrying a firearm during a drug trafficking crime or crime of violence.

**DISCUSSION**

The Court finds none of Long's arguments persuasive and will deny his motion without a hearing. Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody may move to have his sentence vacated, set aside, or corrected if the sentence was imposed in violation of a law or constitutional right such as the right to effective assistance of counsel. In evaluating a § 2255 motion, the Court "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015). When a

---

[2] The four other defendants who went to trial with Long also appealed. Their appeals were likewise denied. *See United States v. Whitfield*, 649 F. App'x 192 (3d Cir. 2016); *United States v. Graham*, 639 F. App'x 152 (3d Cir. 2016); *United States v. Parnell*, 652 F. App'x 117 (3d Cir. 2016); *United States v. Thompson*, 639 F. App'x 154 (3d Cir. 2016).

4

§ 2255 motion is filed, a district court must "grant a prompt hearing" unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

## I.     Ineffective Assistance of Counsel

Long's counsel was not ineffective. To prove that his counsel was ineffective, Long must show: (1) his counsel was deficient and (2) he was prejudiced by counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel is deficient when the "representation fell below an objective standard of reasonableness." *Id.* at 688. When deciding whether counsel falls below this standard, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Even when counsel was deficient, a defendant must still show he was prejudiced in order to succeed on an ineffectiveness claim. A defendant is prejudiced by counsel's behavior when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

None of Long's ineffectiveness claims meet this two-pronged standard. First, counsel's decision to argue Long did not intend to commit a robbery was not constitutionally deficient and, even if it was, did not prejudice the outcome of the trial. The remaining ineffectiveness claims—failing to timely request discovery on his selective enforcement claim, arguing sentencing manipulation rather than sentencing entrapment, and failing to present an outrageous conduct defense—all fail to meet the prejudice prong.

### A.  Rule 404(b) Evidence

Long first argues his counsel was ineffective because he asserted the defense that Long had not intended to commit a robbery, thus opening the door for the admission of evidence that was previously ruled inadmissible propensity evidence under Rule 404(b). The decision to argue

5

Long's lack of intent, and thus open the door to the introduction of evidence of Long's prior robbery may have been a valid trial strategy, but even if it was deficient, it did not prejudice Long. Long's counsel was therefore not ineffective for making this argument that led to the introduction of otherwise admissible evidence.

Rule 404(b) provides, "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). To be admissible, evidence of "uncharged crimes or wrongs must (1) have a proper evidentiary purpose, (2) be relevant, (3) satisfy Rule 403, and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it." *United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010). The focus of Rule 404(b) is that the evidence must not simply show propensity or, in other words, that the defendant committed a crime before and therefore must have done so again. *See United States v. Varoudakis*, 233 F.3d 113, 122 (1st Cir. 2000) ("To be sure, all prior bad act evidence involves some potential for an improper propensity inference. That is why, under Rule 404(b), the possibility that a jury may infer something negative about a defendant's character or propensity to commit crime does not make the evidence inadmissible unless no permissible inference may also be drawn.").

Here, the government filed a motion in limine pursuant to Rule 404(b) seeking to admit evidence of Long's prior uncharged robbery to show his intent to commit the instant robbery and absence of mistake about the conspiracy. The Court noted this evidence was "perilously close to an improper propensity argument." *United States v. Whitfield*, No. 12-418, 2013 WL 12212552, at *1 n. 1 (E.D. Pa. May 8, 2013). The Court therefore denied the motion without prejudice as to

reassertion if the defendants put at issue their lack of intent. In his opening statement, Long's counsel asserted the defense that Long had not intended to commit a robbery but instead met the other defendants to learn about a legitimate opportunity. When he did so, he placed Long's intent and absence of mistake directly at issue. After the opening statement, the government renewed its motion to admit the evidence of Long's prior robbery, and the Court admitted the evidence to rebut Long's claim of lack of intent. Although the Court initially excluded the evidence, Long's counsel's opening statement rendered the evidence admissible under Rule 404(b)(2)'s permitted uses, including to prove intent and absense of mistake. The Third Circuit upheld the admissibility of the evidence. *See United States v. Long*, 649 F. App'x at 203 n.6 ("The evidence was clearly relevant to providing that long knew he was going to the Hilton to hear about a stash-house robbery opportunity.").

At trial, Rawls testified that he gave Long information about a robbery on a prior occasion. After Long reported back that he had in fact completed the robbery, Rawls recruited Long to participate in the instant robbery. The evidence of Long's prior robbery, although excluded at first, was in fact properly admitted into evidence when Long's counsel placed Long's intent at issue. However, proving Long had the requisite intent to commit the robbery was part of the Government's burden in proving the conspiracy. Long's counsel made the strategic decision to argue Long did not intend to commit a robbery. Considering the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, the Court cannot say Long's counsel arguing Long did not intend to commit the crime was constitutionally deficient.

Long also cannot show he was prejudiced by his counsel's actions. *Id.* Based on the totality of the evidence, and the admissibility of the 404(b) evidence, there is not a "reasonable probability

7

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The evidence was admitted with all the procedural safeguards so as to minimize the risk of the jury using it for improper propensity evidence, and the Court issued a limiting instruction to the Jury. As an initial matter, to prevent the introduction of the 404(b) evidence, Long would have been unable to ever make the argument he did not intend to commit the robbery.[3] The jury heard testimony that Long inquired about the need for guns before the planned heist and that Rawls told Long there were "12 bricks" of narcotics in the stash house. Further, Agent Williams testified to witnessing Long retrieve a firearm from the trunk of a car and "rack" it before being arrested. Lastly, Long's four codefendants did not all have 404(b) evidence and they were all convicted of the same charges with similar evidence. Assuming Long could establish his counsel's performance was deficient, he has not demonstrated the result of the proceedings would have been different, and he therefore has not met the prejudice prong of *Strickland*.

### B. Discovery on Selective Enforcement

Long was also not prejudiced by his counsel's delay in raising his selective enforcement claim. The Court would have denied this claim regardless of when it was raised. In its opinion on Long's codefendant Robert Whitfield's selective enforcement claim, the Court noted this claim had been waived but nonetheless addressed the claim on its merits. In addressing the merits, the Court concluded that Whitfield was not entitled to discovery on his selective enforcement claim because he failed to meet the threshold showing of discriminatory effect and discriminatory intent. *See* Mem. Op. at 17-19, June 27, 2014, ECF. No. 377. Therefore, even if Long's request for

---

[3] The 404(b) evidence was properly admitted because Long's counsel put Long's intent at issue. To keep the 404(b) evidence excluded, Long's counsel would have had to never put his intent at issue.

8

discovery had been raised at the appropriate time, it would have been denied, and Long was not prejudiced by his counsel's delay.

Long incorrectly argues the Third Circuit's new ruling in *United States v. Washington*, 869 F.3d 193 (3d Cir. 2017), establishes prejudice. In *Washington*, the Third Circuit held that a defendant seeking discovery on a selective enforcement claim did not have to meet the same high burden as a defendant seeking discovery on a selective prosecution claim. *Id.* at 220. However, the new rule announced in *Washington* is not retroactively applicable to this case. *See United States v. Parnell*, 2020 WL 4736038, at *5-6 (E.D. Pa. Aug. 14, 2020) (explaining that *Washington* does not apply retroactively to Whitfield and Long's codefendant, Kenneth Parnell). Long nonetheless argues the Third Circuit would have announced the new *Washington* standard in his case if his counsel had not waived his selective enforcement claim. The Court disagrees. In Robert Whitfield's direct appeal, the Third Circuit endorsed this Court's decision to use the pre-*Washington* discovery standard announced in *United States v. Armstrong*, 517 U.S. 456 (1996). The Third Circuit stated, "we also think the District Court did not abuse its discretion in applying the [more stringent] *Armstrong* standard to deny defendants' discovery request. Although *Armstrong* dealt only with a discovery request into possible selective prosecution . . . the prima facie elements for both selective prosecution and selective enforcement are the same: discriminatory effect and discriminatory intent." *United States v. Whitfield*, 649 F. App'x 192, 196 n.11 (3d Cir. 2016). This statement shows that, even if the Third Circuit had addressed the merits of Long's selective enforcement claim, it was unlikely to overturn this Court's decision. Long's appeal would therefore have been denied even if his counsel had raised his selective enforcement claim in a timely fashion. Thus, Long did not suffer any prejudice due to his counsel's delay.

### C. Sentencing Entrapment

Long was also not prejudiced by his counsel's sentencing entrapment argument because the Court would have denied Long's sentencing entrapment claim regardless of how that claim was presented. As an initial matter, the Third Circuit has never formally recognized the doctrines of "sentencing entrapment" or "sentencing manipulation." *United States v. Sed*, 601 F.3d 224, 229 (3d Cir. 2010). As recognized by other courts, under the "most expansive formulation" of the sentencing entrapment doctrine, entrapment "occurs when official conduct leads an individual otherwise indisposed to dealing in a larger quantity or different type of controlled substance to do so." *Id.*, at 230. The defendant bears the burden of proving this defense by a preponderance of the evidence. *See United States v. Black*, 733 F.3d 294, 311 (9th Cir. 2013). Long argues the government selected the amount of ten kilos of cocaine for the robbery simply to enhance the sentences they would face. He argues his counsel was ineffective by not raising the sentencing entrapment defense, and instead raising a sentencing manipulation claim.

Long cannot meet his burden to prove sentencing entrapment here. First, the undercover agent testified at trial that ATF selected the drug quantity in this case in consultation with the Drug Enforcement Administration and Philadelphia Narcotics based on the quantities those agencies were seeing in the Philadelphia region so as to ensure the stash house scenario would be believable. *See* Trial Tr. 2.26-2.71. The government therefore had a reasonable basis for selecting this quantity and did not deliberately manipulate the quantity to increase the Defendants' sentences. *See United States v. Black*, 733 F.3d 294, 311 (9th Cir. 2013) (rejecting sentencing entrapment argument where, among other things, the amount of drugs reflected the amount normally found at stash houses in the area). Moreover, it is unclear from the record whether Long was even aware of the quantity of drugs before agreeing to participate in the robbery. Assuming Long was aware, he did

not express any hesitation about committing the robbery, and instead he showed up at the arranged time, coordinated with Rawls in advance, and brandished a firearm in preparation to the planned heist. Rawls also testified that he told Long there were "12 bricks" in the stash house. Long's predisposition to commit the crime is also apparent, as Rawls testified that shortly before the July 18, 2012, robbery, Long had come to him to say that he needed a "lick," which Rawls explained was code for a robbery. Finally, Long has not pointed to any evidence that he was in any way entrapped by the quantity of drugs at issue.

Thus, the evidence at trial showed that Long was predisposed to stealing ten kilograms of cocaine, and he has not demonstrated he was induced to commit this crime by the government's behavior. The Court therefore would have denied Long's sentencing entrapment claim regardless of Long's counsel's arguments. Long was thus not prejudiced by his counsel's alleged failure to thoroughly argue his sentencing entrapment claim. *See United States v. Moffitt*, 797 F. App'x 708, 714 (3d Cir. 2020) (holding a defendant was not prejudiced by his attorney's failure to raise a sentencing entrapment defense in a fake stash house case where, as here, the defendant was not the initial target of the government investigation and the defendant bragged about his past robberies).[4]

### D. Outrageous Conduct

Regarding Long's outrageous government conduct claim, the Court considered the same issue with respect to Graham and found the government's behavior was not "the kind of 'shocking, outrageous, and clearly intolerable' conduct necessary to establish the 'extraordinary defense' of

---

[4] The Court considered the sentencing entrapment argument for Whitfield, Long's codefendant, and denied Whitfield's sentencing entrapment argument because the evidence at trial showed Whitfield was predisposed to stealing ten kilograms of cocaine, and he was not induced to commit this crime by the government's behavior. Mem. Op. at 10-11, July 9, 2014, ECF 388.

outrageous government conduct." Mem. Op. 7, Aug. 21, 2014, ECF No. 423 (quoting *United States v. Nolan-Cooper*, 155 F.3d 221, 230-31 (3d Cir. 1998)). That is true even though Long, like Graham, was not the target of the sting operation and was unknown to ATF until the day of the robbery. As the Ninth Circuit stated in *United States v. Black*, "[a]s long as the government's investigation was initiated and performed tolerably with respect to the operation as a whole," its conduct does not become outrageous "merely because an individual with no known criminal history whom the government did not suspect of criminal activity joined the criminal enterprise at the last minute at the behest of codefendants." 733 F.3d 294, 307 n.11 (9th Cir. 2013).

In evaluating the government's conduct as a whole, the Court relied on the fact that in selecting targets for the sting in this case, ATF chose individuals who it believed had been involved in other home invasion robberies and selected Whitfield only after he affirmatively sought the opportunity for himself. Mem. Op. 3, Aug. 21, 2014, ECF No. 423. The Court also relied on the fact that Whitfield was actively involved in planning the robbery and was a willing participant in the scheme. *Id.* As to the quantity of the drugs, the Court found that ATF had a reasonable basis for selecting the ten-kilogram quantity. *Id.* In addition, as with Graham, Long's conduct the day of the robbery demonstrates his willingness to commit the crime regardless of the agent's actions. He corresponded with Rawls and others on the day of the planned robbery, and he explicitly discussed the need for guns in order to perpetrate the robbery. Even if Long's counsel had raised his outrageous conduct claim at the appropriate time, this claims would have been denied. Long was therefore not prejudiced by his counsel's delay in raising the claim. *See United States v. Lakhani*, 480 F.3d 171, 180, 182 (3d Cir. 2007) (finding evidence of defendant's predisposition to commit the offense at issue, including his "ready response" to the government's solicitation, weighed against a finding of outrageousness).

12

## II.     Carrying a Firearm During a Drug Crime or Crime of Violence

Long is not entitled to relief from his conviction for carrying a firearm during a drug crime or crime of violence under 18 U.S.C. § 924(c). This statute prohibits a defendant from carrying a firearm "during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). In other words, a defendant may be convicted under this statute if he uses a gun in connection with either a drug crime or a violent crime. The statute specifies that a drug trafficking crime includes "any felony punishable under the Controlled Substances Act." *Id.* § 924(c)(2). In a separate provision, the statute sets out a two-part definition of crime of violence. *Id.* § 924(c)(3). In *United States v. Davis*, the Supreme Court struck down one of the two parts of the crime of violence definition as unconstitutionally vague. 139 S. Ct. 2319, 2336 (2019) ("[Section] 924(c)(3)(B) [the residual clause of the definition of crime of violence] is unconstitutionally vague."). The Supreme Court's holding in *Davis* had no effect on the validity of the definition of drug trafficking crime. Defendants who were convicted of carrying a firearm during a drug trafficking crime therefore cannot have their convictions re-examined under the *Davis* line of cases. *See United States v. Parnell*, 652 F. App'x 117, 122 (3d Cir. 2016) ("*Johnson* [a precursor to *Davis*] does not call into question the statute's unambiguous definition of 'drug trafficking crime.'").

Here, because the jury unanimously found Long carried a firearm during a drug trafficking crime, his conviction is not implicated by *Davis*. Long was convicted of conspiring and attempting to sell drugs in violation of 21 U.S.C. § 846. That statute is part of the Controlled Substances Act, so Long's crimes qualify as drug trafficking crimes under § 924(c). In response to special interrogatories in the jury verdict form, the jury found Long had carried a firearm while committing

13

these crimes. *See* Jury Verdict Form 13, ECF No. 245. Because Long was convicted of carrying a firearm in relation to drug trafficking crimes, he is not entitled to relief under *Davis*.

Long nonetheless argues he is entitled to relief because his 924(c) conviction was also based on the crimes of conspiring and attempting to commit Hobbs Act Robbery. This argument is meritless because Long's drug trafficking crimes provide an independent basis for his conviction. The Third Circuit addressed this issue when deciding Parnell's direct appeal and found his conviction would remain valid even if conspiracy and attempt to commit Hobbs Act Robbery were no longer crimes of violence under § 924(c). *Parnell*, 652 F. App'x at 122. The Third Circuit's reasoning on Parnell's direct appeal forecloses Long's argument here. *See United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (a defendant may not use a motion under 28 U.S.C. § 2255 to relitigate an issue already decided on direct appeal).

**CONCLUSION**

The record demonstrates that Long's counsel was not ineffective, and his conviction for carrying a firearm during a drug trafficking crime is not affected by the Supreme Court's decision regarding crimes of violence. The Court will thus deny Long's motion to vacate, set aside, or correct his sentence without a hearing. *See* 28 U.S.C. § 2255(b) (a hearing is not required when "[the] records of the case conclusively show that the prisoner is entitled to no relief"). Because reasonable jurists could not disagree about whether Long is entitled to relief, the Court will not issue a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 484 ("Where a district court has rejected the constitutional claims on the merits, the showing required [for a certificate of appealability] is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").

An appropriate order follows.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.